**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ROBERT COFFEY,

                                  Petitioner,

    v.                                                9:21-CV-0454
                                                        (DNH/CFH)

JAIFA COLLADO, Superintendent of Shawangunk
Correctional Facility,

                                  Respondent.

---

**APPEARANCES:**                                                **OF COUNSEL:**

LAW OFFICES OF THERESA M. SUOZZI          THERESA M. SUOZZI, ESQ.
Attorney for petitioner
480 Broadway, Suite 218
Saratoga Springs, New York 12866


HON. LETITIA JAMES                                   PAUL B. LYONS, ESQ.
Attorney for Respondent                                 Assistant Attorney General
New York State Attorney General
The Capitol
Albany, New York 12224
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION

**I.     INTRODUCTION**

      Petitioner Robert Coffey, through counsel, seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  Dkt. No. 1, Petition ("Pet.").  The Court directed respondent to answer the petition.  Dkt. No. 4, Decision and Order ("April Order").  Respondent requested, and was granted, permission to file a motion to dismiss.  Dkt. No. 8, Motion to Dismiss; Dkt. No. 9, Text Order.  Petitioner filed a counseled opposition to the motion.  Dkt. No. 15,

Petitioner's Opposition.  Respondent replied.  Dkt. No. 16.

On review of the motion and supporting documents, the Court discovered that affidavits, which were averred to allegedly be attached to the petition, were not.  Dkt. No. 17, Text Order.  Similarly, the Court also identified a state court collateral action which petitioner had filed challenging his criminal conviction; however, the details of the motion and subsequent judicial decisions and any related appeals were also missing.  *Id.*  The Court directed petitioner's counsel to provide the Court with the affidavits and respondent's counsel to produce a complete procedural history for the state court action.  *Id.*  Those documents were timely submitted.  Dkt. No. 18, Affidavits; Dkt. No. 25, State Court Record ("SCR").[1]

For the aforementioned reasons, the Court recommends dismissing the petition as untimely.

## II.   BACKGROUND

### A.   Criminal Proceedings

The facts of the underlying criminal proceedings are not in dispute.

> In full satisfaction of nine counts charged in two separate indictments, [petitioner] pleaded guilty to two counts of rape in the first degree and waived his right to appeal.  Pursuant to the plea agreement, he was to be sentenced to consecutive prison terms of 13 years on the first rape count and 12 years on the second rape count.

*People v. Coffey*, 77 A.D.3d 1202, 1202 (N.Y. App. Div. 2010).  During the plea hearing,

---

[1] For the sake of clarity, citations to petitioner's filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.  The only exception is the State Court Record, Dkt. Nos. 24 & 25, which is separately paginated per the Bates Stamp number in the bottom center of each page. Docket No. 25 represents the State Court Record in its entirety; however, the first 185 pages of that record are sealed in accordance with the Court's prior Order, Dkt. No. 23.  The unsealed portion is located at Dkt. No. 24 and encompasses the remaining seventy-nine pages of the record..  Citation will be made to the record, in its entirety, although some of those documents will not be visible by the public for the reasons stated in the Court's prior Order.

petitioner "allocuted that he met [the victim] while at a bar [and] that he later took her back to his residence." Pet. at 3. Petitioner "also admitted that [the victim] has been rendered unconscious by some substance that she ingested and that he had sexual intercourse with her while she was unconscious and was unable to consent to sexual intercourse due to her condition." *Id.* (internal quotation marks omitted). The plea was accepted and the matter adjourned for preparation of a presentence report and sentencing. *Id.*

> The terms of the plea agreement also required [petitioner] to cooperate with the Probation Department in its preparation of a presentence report, which included answering its inquiries truthfully and in conformity with his representations to County Court during the plea allocution and accepting responsibility for his actions. County Court advised [petitioner] that, if he failed to abide by the conditions of the plea agreement, the court would not be bound to the sentencing agreement and could impose maximum consecutive sentences for the crimes. When [petitioner] appeared for sentencing, the People indicated, and defense counsel and [petitioner] acknowledged, that [petitioner] failed to comply with those conditions. County Court agreed and sentenced [petitioner] to consecutive prison terms of 20 years on the first rape count and 15 years on the second rape count.

*Coffey*, 77 A.D.3d at 1203.

## B.  Direct Appeal

On appeal, the New York State Appellate Division, Third Department, unanimously affirmed petitioner's judgment of conviction on October 28, 2010. *Coffey*, 77 A.D.3d at 1204. Specifically, the Third Department held that (1) petitioner's appeal waiver was valid; (2) the county court did not err in imposing an enhanced sentence; and (3) petitioner's claims challenging the effectiveness of his counsel and the severity of his enhanced sentence were barred by his appeal waiver. *Id.* at 1203-1204. Petitioner applied for leave to appeal; however, on January 26, 2012, the Court of Appeals, State of New York, denied the

3

application. *People v. Coffey*, 18 N.Y.3d 882 (2012).

### C.     Collateral State Court Challenges

Petitioner also filed two motions to vacate his judgment pursuant to New York State Criminal Procedure Law § 440.10 ("440 motion"). Dkt. No. 8 at 13. The first 440 motion was counseled and filed on April 10, 2014. SCR at 1-48 (440 motion); SCR at 51-185 (exhibits in support). Petitioner argued that he was entitled to relief because (1) the trial court "erred in not providing [petitioner] with an opportunity to withdraw his plea of guilty before imposing an enhanced sentence," and (2) there were "numerous alleged infirmities with the prosecution of the case[.]" SCR at 197; *see also* SCR at 45-47. Petitioner also contended that his counsel was constitutionally ineffective. SCR at 33-45, 200-203.[2] The motion was denied by the Albany County Court without a hearing on June 10, 2014. Dkt. No. 8 at 13; SCR at 198, 200-204.

Petitioner sought leave to appeal, and, on August 22, 2014, the Third Department denied petitioner's application. Dkt. No. 8 at 13; SCR at 263. Petitioner unsuccessfully moved for reconsideration, which the Third Department denied on December 2, 2014. SCR at 264.

The second 440 motion was filed on April 4, 2019, and denied without a hearing on May 12, 2020, by Albany County Court. Pet. at 4; Dkt. No. 8 at 13-15; Dkt. No. 18-1 at 12-23 (copy of motion papers). Petitioner argued that he was entitled to relief because (1) there was newly discovered evidence; (2) his plea was involuntary; and (3) there was a *Brady*

---

[2] The first page of petitioner's argument alleging ineffective assistance of counsel is missing from the 440 motion provided to the Court. *Compare* SCR at 32 (indicating the page number of the memorandum of law is 33) *with* SCR at 33 (indicating the next page number is 35). However, the omission appears accidental and does not change the outcome of the instant recommendation.

violation. Dkt. No. 8 at 13-14. The court began by explaining that petitioner's "guilty plea forecloses any relief based upon newly discovered evidence as [a 440 motion] . . . is available only after a verdict of guilt after a trial." *Id.* at 14 (internal quotation marks omitted). Moreover, the court found that, with respect to the voluntariness of his plea, petitioner was in a position to raise any such claims on his first 440 motion but failed to do so. *Id.* Finally, the court denied petitioner's *Brady* claim because petitioner (1) failed to specifically request the complained of information in his discovery demands; (2) the information established nothing more than a mere possibility that it would have helped his defense; and (3) the claim, and requested hearing, was "to flesh out [petitioner's] speculative assertions." *Id.* at 14-15.

Petitioner sought leave to appeal to the Third Department; however, the application was denied on July 14, 2020. Dkt. No. 8 at 16. Petitioner then applied for leave to appeal to the Court of Appeals. That application was dismissed on October 8, 2020. Dkt. No. 8 at 17.

### III. HABEAS PETITION

Petitioner challenges the 2006 judgment of conviction in Albany County, upon a guilty plea, of two counts of first degree rape. Pet. at 1-3; *accord People v. Coffey*, 77 A.D.3d 1202, 1202 (3rd Dep't 2010). Petitioner argues that he is entitled to federal habeas relief because (1) his plea was involuntary, Pet. at 4, 5-12; (2) his trial counsel was constitutionally ineffective, *id.* at 4, 24-32; (3) newly-discovered evidence from private investigator's interviews with the victim demonstrate that petitioner is actually innocent, *id.* at 4, 19-24; (4) the sentence was harsh and excessive, *id.* at 4, 32-37; and (5) a *Brady* violation denied petitioner due process, *id.* at 12-19.

With respect to the new evidence petitioner relies on, petitioner presents several affidavits that were discovered, he claims, years after his direct appeal concluded. Pet. at

5

14-24; *see also* Dkt. No. 18. There are four affidavits in total -- two from witnesses, Dkt. No. 18-1 at 2-4, and two from private investigators, Dkt. No. 18-1 at 5-11. The first, third and fourth affidavits were used as exhibits in support of his first counseled 440 motion, filed on April 14, 2014. SCR at 172-73, 176-77, 182-83.

The first affidavit is from the victim's friend, and was notarized on April 1, 2013. Dkt. No. 18-1 at 3; *see also* SCR at 182-83. As is relevant here, the victim's friend recalls the victim seeing petitioner on the television at her home, where the victim said, in sum and substance, that the petitioner "looked familiar but she did not know where she knew him from." Dkt. No. 18-1 at 3. The victim did not disclose to her friend that petitioner "had sexually assaulted her or raped her;" in fact, the victim had never claimed she had been raped by anyone. *Id.* The victim never told her friend, the affiant, about the case or the accusations. *Id.* The victim's friend also disclosed that they no longer remained close, that she felt the victim was a dishonest person, and that the friend was surprised, with the victim's "propensity to tell . . . her friends about her sexual exploits . . . that she . . . never . . . said one word . . . about the alleged rape." *Id.* at 2-3.

The second affidavit is from the petitioner's friend and was notarized on May 3, 2017. Dkt. No. 18-1 at 4. Petitioner's friend states that in "the early hours of July 7, 2005, [petitioner] and [he], along with a girl whose name [the friend] don't [*sic*] recall, all left the bar together and got into [petitioner's] car. At this time, [petitioner] dropped [the affiant] off at [his] home and [petitioner] and the girl drove off." *Id.*

The third affidavit is by an employee of the private investigator retained by petitioner. Dkt. No. 18-1 at 5. The affiant indicates that he was present when the victim was interviewed on December 2, 2013, and that the affiant "made contemporaneous notes on the date of the

6

interview and transcribed them into an affidavit," which was provided to petitioner's trial counsel "several years ago." *Id.; see also* SCR at 176-77.  The affidavit explains that the employee was with the investigator during the interview of the victim.  Dkt. No. 18-1 at 6.  The victim stated that "she had been drinking during the evening with her girlfriends [and then] . . . left the bar voluntarily with [petitioner]."  *Id.*  The victim reported "that she did not recall any details after leaving the bar," including who they left with, who rode with them in the car, how she got to petitioner's house, and what happened when she got there.  *Id.*  In sum, the victim "stated that she did 'not know what sex' occurred at [petitioner's] residence."  *Id.*  The victim also shared she had been sexually assaulted before and it was a very traumatic experience.  *Id.*

The victim reported that she was at her friend's home, the first affiant, when she saw petitioner on the television.  Dkt. No. 18-1 at 6.  The victim related that "she became so upset . . . that she actually dropped [her friend's] baby and that [her friend] caught the baby before it fell to the ground."  *Id.* at 6-7.

The final affidavit is submitted by the private investigator retained by petitioner, to whom the employee above referenced.  Dkt. No. 18-1 at 8-11.  The affidavit memorializes the interview the private investigator and his employee did with the victim on December 2, 2013.  *Id.* at 8; *see also* SCR at 172-73.  The affidavit corroborates the details of the interview as described by the third affiant, including that victim did not recall any details after leaving the bar and arriving at petitioner's home.  Dkt. No. 18-1 at 9-10.

## IV.    DISCUSSION

### A.    The Petition Is Untimely.

The AEDPA established a one-year statute of limitations for prisoners to seek federal

7

review of their state court criminal convictions. 28 U.S.C. § 2244(d)(1). The one-year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review. 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 & n.9 (2012).[3] In New York, that period is thirty days. *Gonzalez*, 565 U.S. at 150; *Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2002) (citing N.Y. CPL § 460.10(1)). The one-year limitation period under AEDPA is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" 28 U.S.C. § 2244(d)(2); *Saunders v. Senkowski*, 587 F.3d 543, 548 (2d Cir. 2009). The tolling provision "excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam); *Rodriguez v. Smith*, No. 9:14-CV-1274 (BKS/ATB), 2015 WL 5968837, at *6 (N.D.N.Y. Oct. 13, 2015).

The New York Court of Appeals denied petitioner's application for leave to appeal on January 26, 2012. *Coffey*, 18 N.Y.3d at 882. Petitioner did not file an application for a writ of certiorari, therefore, his conviction become "final" for purposes of the AEDPA ninety days later, on April 25, 2012, when the time to seek certiorari expired. *Thaler*, 565 U.S. at 149-150. Therefore, petitioner had until April 25, 2013, to timely file his federal habeas petition. The present petition, which was filed on March 18, 2021, is untimely because it was

---

[3] Other dates which may trigger running of the limitations period are: the date on which an impediment to filing an application created by state action in violation of the U.S. Constitution or laws is removed, if the applicant was prevented from filing by such action; the date on which the constitutional right on which the petitioner bases his habeas application was initially recognized by the Supreme Court, if the right has been newly recognized and made retroactively applicable to cases on collateral review; and the date on which the factual predicate of the claim(s) presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(B)-(D).

submitted approximately seven years and ten months after the expiration of the statute of limitations.[4]

Petitioner contends that the petition was timely filed because it is challenging the arguments proffered in his second 440 motion, and not his direct appeal. Dkt. No. 15 at 4-6, 11-12. However, petitioner seems to misunderstand the intricacies of statutory tolling. Despite petitioner's arguments, his second 440 motion does not help to save the timeliness of his petition because it was filed on April 4, 2019, over five years and ten months after the statute of limitations expired. Accordingly, it would have no bearing on the present analysis because an application for collateral relief cannot serve to "revive [an] expired statute of limitations." *Gillard v. Sticht*, No. 9:16-CV-0513 (MAD), 2017 WL 318848, at *3 (N.D.N.Y. Jan. 23, 2017) (citations omitted); *accord, Roberts v. Artus*, No. 1:16-CV-2055, 2016 WL 2727112, at *2 (E.D.N.Y. May 5, 2016) ("If the 440 motion was filed after the one-year statute of limitations period expired, it cannot be counted for purposes of statutory tolling.").

Furthermore, petitioner's first 440 motion is similarly unhelpful for identical reasons. The first 440 motion was filed on April 10, 2014, SCR at 2, 350 days beyond the expiration of the limitations period. Because an application for collateral relief cannot serve to "revive [an] expired statute of limitations," the first 440 motion is also inappropriate to trigger statutory tolling. *Gillard*, 2017 WL 318848, at *3; *accord, Roberts*, 2016 WL 2727112, at *2.

Therefore, the petition is untimely.

**B.    Petitioner Has Failed to Demonstrate That He Is Entitled to Equitable Tolling**.

---

[4] Under the prison "mailbox rule," a petitioner's application is deemed filed on the date he delivers it to the prison authorities for mailing. *Houston v. Lack*, 487 U.S. 266, 270 (1988).

9

AEDPA's one-year statute of limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010) (citing, *inter alia*, *Smith* 208 F.3d at 17). The Second Circuit has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011). A petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008). To make the requisite showing, a petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing[.]" *Rodriguez*, 2015 WL 5968837, at *6 (quoting *Hizbullahankhamon v. Walker,* 255 F.3d 65, 75 (2d Cir. 2001)). Further, a petitioner must establish that he "acted with reasonable diligence throughout the period he seeks to toll." *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004). "The link of causation is broken if the person seeking equitable tolling has not exercised reasonable diligence." *Rodriguez,* 2015 WL 5968837, at *6 (citing *Barrett v. United States*, 961 F. Supp. 2d 403, 408 (D. Conn. 2013)); *see also Hizbullahankhamon,* 255 F.3d at 75; (noting that causal relationship cannot be demonstrated "if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances").

Petitioner contends that extraordinary circumstances entitle him to equitable tolling. Namely, petitioner states that "many of the grounds and newly discovered evidence did not come to the petitioner's attention until well after the direct appeal was exhausted[.]" Dkt. No. 15 at 6-7. Per petitioner, "[i]t would have been impossible for [him] to file [the instant action] before he filed the required 440 motion to introduce this evidence into the record[.]" *Id.* at 7.

Petitioner points to the fact that his family had to hire a private investigator to demonstrate the difficulty with which it took him to acquire the critical new information at issue in the instant action. *Id.* at 8.

Petitioner's arguments, however, are unavailing. First, petitioner fails to account for the time lapses between the dates affidavits were notarized and when he allegedly received the information. For example, the private investigator and his employee's initial affidavits summarizing the victim's interview from December 2, 2013, were notarized on January 25, 2014, and January 22, 2014, respectively. Dkt. No. 18-1 at 6-7, 9-11. The investigator was, per the petitioner, commissioned by his family. Accordingly, it would stand to reason that they were informed of the results of the interviews and investigation immediately thereafter. The same is true for the affidavit of the victim's friend, also notarized on April 1, 2013, which was prepared by the private investigator. Dkt. No. 18-1 at 3. At the absolute latest, petitioner would have been apprised of three of the four affidavits by April of 2014 when they were used as exhibits in support of his first, counseled 440 motion. *See* SCR at 172-73, 176-77, 182-83. Petitioner fails to explain why it took him five additional years, until April of 2019, to argue that there was new evidence demonstrating a *Brady* violation and actual innocence. This extended time period belies any claims that petitioner was diligently pursuing his rights and contradicts any contentions that extraordinary circumstances prevented him from timely filing his application. *See McPherson v. Burge*, No. 9:06-CV-1076 (GTS/VEB), 2009 WL 1293342, at *7 (N.D.N.Y. May 5, 2009) (declining equitable tolling where there was a one year delay between the filing of a collateral challenge and habeas petition, with "no evidence that the . . . delay . . . was caused by any events beyond Petitioner's control.").

Therefore, equitable tolling does not save petitioner's untimely filing.

11

### C. Petitioner Has Not Made a Credible Showing of Actual Innocence.

Courts have also recognized an equitable exception to the one-year statute of limitations under 28 U.S.C. §2244(d)(1) in cases where a petitioner can prove actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). It is important to stress that "[o]nce guilt is . . . established . . . a federal habeas court will not relitigate the question of guilt for a state defendant who protests his actual innocence . . . [r]ather, a federal habeas court will review state convictions for constitutional error." *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019).

An actual innocence claim will be recognized only in a "narrow class of truly extraordinary cases [where a petitioner can] present[] credible and compelling claims of actual innocence." *Hyman*, 927 F.3d at 656 (citing *Schlup v. Delo*, 513 U.S. 298, 315 (1995)) (internal quotation marks omitted); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (noting that the actual innocence gateway standard is "demanding and permits review only in the extraordinary case.") (internal quotation marks omitted). "The petitioner's burden in making a gateway showing of actual innocence is deliberately demanding." *Hyman*, 927 F.3d at 656 (citing cases). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence–that was not presented at trial." *Schlup*, 513 U.S. at 324; *see also Rivas v. Fischer*, 687 F.3d 514, 518 (2d Cir. 2012); *Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003). In addition, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup*, 513 U.S. at

327);[5] *see also Doe*, 391 F.3d at 160-62.

"The standard's demand for evidence *of innocence* references factual innocence, not mere legal insufficiency." *Hyman*, 927 F.3d at 657 (internal quotation marks and citations omitted). In clarifying what this standard requires, the Second Circuit explained:

> a reviewing court assessing the probability of actual innocence is not limited to the trial record. To the contrary, it "must consider all the evidence, old and new, incriminating and exculpatory," *House v. Bell*, 547 U.S. at 538 . . . (internal quotation marks omitted), and, in doing so, "is not bound by the rules of admissibility that would govern at trial," *Schlup v. Delo*, 513 U.S. at 327 . . . This is because, at the gateway stage of inquiry, a habeas court's task is not to identify trial error or to delineate the legal parameters of a possible new trial. It is to identify those cases in which a compelling showing of actual innocence would make it a manifest injustice to maintain conviction unless it was free of constitutional error. Thus, incriminating evidence obtained in the course of an unlawful search, or custodial admissions made in the absence of Miranda warnings, may well be inadmissible at trial. Nevertheless, such evidence is properly considered in assessing factual innocence, with the manner of procurement informing reliability and relevance and, therefore, weight.

*Id.* at 658; *see also Bousley v. United States*, 523 U.S. 614, 623-24 (1998) ("'[A]ctual innocence means factual innocence, not mere legal insufficiency.") (citations omitted).

Petitioner's arguments are problematic because even if the evidence petitioner presently seeks could be deemed credible, his arguments are not compelling enough to show actual innocence. In order to satisfy the actual innocence bar, "the new evidence [must] directly support[] petitioner's factual innocence by indicating either that he *did not* commit, or *could not* have committed, the crimes of conviction." *Hyman*, 927 F.3d at 665.

---

[5] *Schlup* and *House* involved procedurally defaulted claims. *See McQuiggan*, 569 U.S. at 386. The Supreme Court in *McQuiggan* held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, the expiration of the statute of limitations." *Id.*

13

The petitioners in *McQuiggan*, *House*, *Schlup*, and *Rivas* provided the courts with such evidence. *See McQuiggan*, 569 U.S. at 389 (affidavits pointing to another suspect); *House*, 547 U.S. at 540, 543-44 (new DNA evidence, testimony regarding possible contamination of evidence, and evidence regarding a different suspect indicating petitioner did not kill the victim, instead someone else had); *Schlup*, 513 U.S. at 307, 331 (sworn statements of eyewitnesses identifying different criminal participants and an affidavit providing petitioner with an alibi at the time of the crime, supporting defendant's innocence); *Rivas*, 687 F.3d at 528, 543-44 (affidavit from expert in forensic pathology identifying time of death of victim to be at a time when petitioner had an unchallenged alibi; thus petitioner could not have committed the murder). Here, petitioner did not.

Considering the content of the proffered affidavits, the totality of the evidence still demonstrates that a reasonable juror would find petitioner guilty beyond a reasonable doubt. All of these affidavits fail to overcome the weight of petitioner's prior guilty plea. *See United States v. Holland*, No. 1:07-CR-0202 (FJS), 2014 WL 12810189, at *4 (N.D.N.Y. May 20, 2014) ("A defendant who admits guilt in his plea agreement and plea allocution cannot be factually innocent) (citing *Rosario v. United States*, 164 F.3d 729, 734 (2d Cir. 1998). Petitioner's introduction of the victim's interview statements, that she did not remember the exact events of the night in question – including what sexual encounters she had with petitioner – are consistent with the recitation of events provided by petitioner. Petitioner allocuted that he met the victim at a bar and took her back to his apartment. Petitioner admitted that the victim was "rendered unconscious by some substance that she ingested and that he had sexual intercourse with her while she was unconscious and . . . unable to

14

consent . . . due to her condition." Pet. at 3. His conclusory assertions that these affidavits now contradict his sworn testimony "lack the probative force necessary to support a claim of actual innocence." *Pluff v. Superintendent*, No. 9:18-CV-0914 (DNH/DJS), 2021 WL 4463557, at *4 (N.D.N.Y. Sept. 8, 2021) (internal quotation marks and citations omitted).

Further, testimony that the victim did not share the rape with her friend or automatically disclose how or why petitioner looked familiar to her does not mean that the aforementioned events did not happen. Similarly, the fact that others may have derogatory opinions of the victim, even someone purporting to be her friend, does not mean that she was not assaulted by petitioner. It is reasonable to conclude that a victim would not want to be revictimized by continually sharing traumatic events, especially when the victim's recollection of what happened was clouded or completely eroded and she had previously had a negative experience reporting sexual assault in the past. Moreover, none of this challenges, let alone contradicts, the sworn testimony of the petitioner, who admitted his guilt to the crime of raping the victim while she was unconscious and unable to consent. *Pluff*, 2021 WL 4463557, at *4.

Finally, the petitioner's friend's testimony, that the victim left the bar with petitioner willingly, only presents a portion of the relevant events that evening. The petitioner's friend was not, by anyone's account, present at the petitioner's apartment when he sexually assaulted the unconscious victim. Accordingly, even presuming the petitioner's friend's observation to be true, it is not persuasive because it does not speak to petitioner's factual innocence from the crime charged. What speaks to petitioner's innocence was his sworn testimony, wherein he admitted his guilt. *Pluff*, 2021 WL 4463557, at *4

In sum, the evidence demonstrates that petitioner admitted to committing the

15

underlying acts for which he was accused. While no jury was impaneled because petitioner pled guilty, to the extent such information was presented to a jury, this Court finds that it is more likely than not that reasonable jurors would find petitioner guilty beyond a reasonable doubt. Accordingly, petitioner's claims of actual innocence are insufficient to pass through the narrow gateway for federal review of a barred claim.[6]

## VII. CONCLUSION

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that respondent's motion to dismiss, Dkt. No. 8, be **GRANTED**; and it is further

**RECOMMENDED**, that the petition, Dkt. No. 1, be **DENIED AND DISMISSED IN ITS ENTIRETY;** and it is further

**RECOMMENDED**, that no Certificate of Appealability ("COA") shall issue because petitioner has failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[7] and it is further

**RECOMMENDED**, that any further request for a Certificate of Appealability be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**RECOMMENDED**, that the Clerk shall serve a copy of this Report-Recommendation and Order upon the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to

---

[6] Because the petition has been dismissed as untimely, the Court will not further discuss whether petitioner's claims were properly exhausted or meritorious.

[7] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).

file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

    Dated: December 7, 2021
          Albany, New York

Christian F. Hummel
U.S. Magistrate Judge